TROVER.

Case 71.

April 28.

The case stated.

# McGuire *vs* Maloney.

APPEAL FROM THE ESTILL CIRCUIT.

*Husband and wife. Witness. Competency. Evidence.*

JUDGE MARSHALL delivered the Opinion of the Court.

THIS was an action of trover, brought by John Maloney against McGuire, who, as administrator of John Maloney, Sr. the plaintiff's father, had sold divers goods and chattels, as belonging to the estate of the decedent, but which the plaintiff claims to have been his property, under an instrument of writing purporting to have been executed by his father and himself, in the presence of two subscribing witnesses, and to transfer to him the property in question.

To prove the execution of this instrument, the plaintiff introduced his mother, the widow of John Maloney, who stated, in substance, that the two subscribing wit-

nesses were both dead; that she saw her husband write the instrument and sign the names of himself and the plaintiff, and also of the subscribing witnesses, whom she also saw make their marks; that she heard the two Maloneys make the agreement and acknowledge it; and that her husband handed the instrument to her at its date, and she had kept it ever since; whereupon the instrument was handed to the jury.

The defendant objected to the competency of this witness when she was offerd, and afterwards moved to exclude her testimony and the instrument from the jury, and having taken exceptions to the opinions of the Court on these and other points, brings the case up for the revision of this Court, and principally upon the question of the competency of the witness.

Upon this question it may be remarked in the first place, that so far as appears, the witness had no interest, herself, in the matter about which she was called to testify, and that her testimony could not effect the interest, the person, or the character of her deceased husband.

It is, nevertheless, true that the policy of the law, subserving the fundamental interests of society, so far protects that privacy and confidence which are essential to the marriage relation, and necessarily spring from it, as not only not to allow, but to prevent, even after the termination of the coverture, any disclosure by the wife, in a court of justice, which implies a violation of the confidence which was reposed in her as a wife. The argument of the counsel for the appellant would go much farther, and seal the lips of the wife from disclosing any act or declaration of the husband, done or said in her presence, and especially in his own house. But neither the principles laid down by the elementary treatises referred to, nor any adjudged case which has been seen, nor the reason and purpose of the law require, or indeed authorize such an extension of the rule.

*Wife, either during coverture or after death of husband, from reasons of policy, is not a competent witness to make any disclosure which implies a violation of the confidence reposed in her as a wife.*

The law will not permit, even after the death of the husband, any disclosure by the wife, which seems to violate the confidence reposed in her as a wife, lest such permission might tend to impair the harmony

McGuire
vs
Maloney.

But after the death of husband she is competent to prove his public acts, or those designed to be public, not effecting his character.

of the marriage state, and to effect, injuriously, the interests of society dependent upon it.

But where there is not even a seeming confidence, when the act done or declaration made by the husband, so far from being private or confidential, is designedly · public at the time, and from its nature, must have been intended to be, afterwards, public, there is no interest of the marriage relation or of society which, in the absence of all interest of the husband or wife, requires the latter to be precluded from testifying between other parties, such act or declaration not affecting the character or person of the husband. Accordingly, in the case of *Jackson* vs *Vandusen*, 5 *John. Rep.* 144, the wife was permitted to prove a parol division between her deceased husband and his brothers, although her knowledge of the facts was, in part, derived from the communications of her husband; and in the case of *Jackson* vs *Bard*, 4 *John. Rep.* 230, the wife was permitted to prove that a deed, purporting to have been executed by her husband and herself, was ante-dated. In each of the cases of *Allison's devisees* vs *Allison's heirs*, 7 *Dana*, 90, and *Singleton's devisees* vs *Singleton's heirs*, 8 *Dana*, the widow of the deceased testator was a witness in the con- test between the heirs and devisees, to prove the acts and declarations of the deceased, which might effect the va- lidity of the will.

In most of these cases the question of competency was directly made and decided; not indeed on the ground of the rule of policy, now under discussion, but on the ground of interest. And in the case of *Allisons* vs *Allisons*, 7 *Dana*, 90, the deposition of the wife had, on this and other grounds, been excluded by the Court of original jurisdiction, but was decided to be admissible by this Court. It is true that as no objection was for- mally made in these cases, on the ground of the rule of policy, applicable to the relation of husband and wife, the cases may not be entitled to the full weight of express decisions on the point.

But it is to be observed that in the two last cases the matter of controversy, and the attitude of the parties and witness were substantially the same as in the case now

before us, and the fact that in these and similar cases, (and we believe in many similar cases,) the widow, when free from interest in the immediate contest, has been permitted to prove acts and declarations of her husband, without any notice of the objection now urged, tends strongly to demonstate a concurrent opinion, both of the bench and the bar, that such an objection was wholly inapplicable in cases in which the acts and declarations, deposed to by the wife, were obviously more nearly within the principle of the rule than those which are deposed to in the present instance.

We refer to the negative authority of these cases, therefore, as strongly corroborating the conclusion to which we have come, that the witness, in this case, was competent to prove the facts to which she testified, and that the Circuit Court committed no error in refusing to reject or exclude her testimony or the instrument of writing to which it related. And although there was testimony tending to disprove the genuineness of the instrument, the evidence was such as the jury had a right to weigh, and we cannot, in opposition to the opinion of the Circuit Court, set aside their decision.

Wherefore the judgment is affirmed.

*Turner* for appellant: *Breck and Goodloe* for appellee.